# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REINARD SMITH** : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 18-3840** |
| : | |
| **ALEX KERSHENTSEF et al.,** : | |
| **Defendants.** : | |

## MEMORANDUM

**MCHUGH, J.**                                                        **FEBRUARY 11, 2019**

      This case arises out of a used car purchase that ended badly for the buyer. There are a number of troubling allegations surrounding the transaction, but in light of the agreements that Plaintiff signed, there does not appear to be any legal remedy. It does, however, underscore why some states, unlike Pennsylvania, forbid the sale of a used car without at least some warranty.

      Plaintiff Reinard Smith, proceeding pro se, brings this action against a used car dealership, Key & V Auto Sales Corporation, and multiple employees of the dealership, including Alex Kershentsef, along with four additional John and Jane Doe Defendants. Mr. Smith asserts two federal claims and three state law claims. His federal claims are brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. § 1692k(a)(1). The state law claims are brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-9.2, state law governing the authorization of repossession, 12 Pa. C.S.A. § 6251, and a contract claim for anticipatory repudiation, 13 Pa. C.S.A. § 2610. Accompanying each claim is a demand for punitive and compensatory damages as well as a demand for injunctive relief.

In the final analysis, this case turns on two issues: (1) whether all warranties were disclaimed through an installment sale contract Smith entered into with the Dealership for purchase of the vehicle, and (2) whether the Dealership had the right to repossess the vehicle upon default of the installment payments. The Dealership has moved to dismiss, arguing that the contract properly disclaimed all warranties through statements that the vehicle was sold without warranty "as-is," and that the contract provided a legal right to repossession because Smith defaulted on several payments. Having reviewed the parties' submission, I am compelled to conclude that Smith has not pled sufficient facts for relief under Magnuson-Moss Warranty Act or the FDCPA. This action is before me solely on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and I decline supplemental jurisdiction over the remaining state law claims. Accordingly, the Dealership's Motion to Dismiss will be granted in full.

## I.     FACTUAL RECORD

Smith contends he was a college student experiencing homelessness, who fortuitously acquired some funds, and decided to use them to purchase a car, both to use as an Uber driver, and as a place to sleep. Smith went to Key & V Auto Sales on September 1, 2017 looking to purchase a used vehicle. A salesperson at the Dealership showed Smith three vehicles in his price range, one of which was a silver 2007 Lexus ES 350 with 100,418 miles. The vehicle did not have a used car "Buyers Guide" physically affixed to it. Smith was not offered a test drive of the car but was purportedly informed by the Dealership's employees that the car had no problems, came equipped with "everything," and that if he had problems with the car he had a "90 day warranty." Pl.'s Compl. ¶¶ 20, 23 (ECF No. 2).

Smith decided to purchase the vehicle and "filled out all the necessary paperwork" with the Dealership's billing department. Pl.'s Compl. ¶ 22. The paperwork included an agreement

of sale, specifying the terms of the installment sale contract into which the parties entered. Under the contract, Smith agreed to pay $3,000 up front and $290 per month to cover the balance of $15,752.89. Mr. Smith signed the agreement twice. Next to his first signature was the following language, "I relinquish all rights to this vehicle and it can be reposessed [sic] at any time or place, with or without my knowlege [sic], if this account becomes delinquent." Defs.' Mot. Dismiss Ex. D (ECF No. 7-3). Next to the second signature was the language, "SOLD AS IS I make this purchase knowingly without any gurantee [sic] by this dealer." *Id.* Smith also signed a document entitled "NON WARRANTY NOTICE" in large bold font. Defs.' Mot. Dismiss Ex. E (ECF No. 7-3). On the notice, appearing three times in total above and below Smith's signature, was a statement that buyer is aware that the vehicle is purchased "as-is with no warranty whatsoever." *Id.*

Smith took possession of the car that day and used it without incident for the next week. On September 7, 2017 Smith was in the process of completing a U-turn when the "steering column [became] stuck" and he struck a parked van at a speed of about 25 miles per hour. Pl.'s Compl. ¶¶ 26, 27. The airbags did not deploy on contact and Smith suffered injuries from his head hitting the windshield as well as severe front-end damage to the vehicle.

From September 11 to October 16 of 2017, Smith made several attempts to have the Dealership address the malfunction on the vehicle, including verbal discussions and a complaint sent via fax and delivered in person. According to Smith, on each occasion the Dealership refused to discuss any issues with the car.

Smith defaulted on his payments for the vehicle in November and December 2017 and the vehicle was repossessed. On December 29, 2017, Smith made payment for the $580 due on the installment contract as well as $450 for the repossession fee and again took possession of the

vehicle. In combination, the malfunctions, defects, repossessions, and failure of the Dealership to address problems with the car caused "financial hardships" for Smith. Eight months later, in August 2018, the Dealership again repossessed the vehicle after Smith failed to make payments and remained in possession at the time of the filing of this suit.[1]

## II.   DISCUSSION

### A.  Standard of Review

Defendants' Motion to Dismiss is governed by the well-established standard set forth in Federal Rule of Civil Procedure 12(b)(6), as elaborated upon by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In resolving a motion under Rule 12, I may properly consider "documents which are attached to or submitted with the complaint, as well as . . . documents whose contents are alleged in the complaint and whose authenticity no party questions." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (emphasis omitted) (citation omitted). This includes documents "that the defendant attaches to the motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to the claim." *Id.* (internal citation and emphasis omitted).

With regard to the contract and any other documents Smith signed in purchasing the vehicle, he alleges in his complaint only that he "filled out paperwork" and attaches a single disclosure document from the day of the sale. The Dealership, however, attached to its Motion to Dismiss a copy of the installment sale contract and non-warranty notice, which both appear to have Smith's signature on the same date he purchased the vehicle. The "paperwork" he mentions is clearly referencing these documents, and in his reply memorandum Smith does not

---

[1] In his responsive pleading, Smith admits he withheld payments prior to the August 2018 repossession on the erroneous belief that the alleged violations of federal and state law gave him the right to do so.

4

question their authenticity. I may, therefore, properly consider the contract and warranty notice in addition to the factual allegations in the complaint.

### B. Magnuson-Moss Claim

The Magnuson-Moss Warranty Act authorizes any consumer "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty . . . [or] implied warranty" to file a suit for damages or equitable relief (an injunction, for example). 15 U.S.C. § 2310(d)(1). Smith brings two claims under the Act, asserting: 1) that the failure of the Defendants to attach a used car "Buyer's Guide" to the vehicle violated a requirement of the Act and 2) that Defendants breached both implied and express warranties in the sales agreement.

#### 1. Amount in Controversy

There is a financial threshold for the claims Mr. Smith raises. Such claims may not be brought in federal court if "the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit." 15 U.S.C § 2310(d)(3)(B). To determine whether the jurisdictional amount is met, the "party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) (quoting *Voelker v. Porsche Cars North Am., Inc.*, 348 F.3d 639, 643 (7th Cir. 2003)). Punitive damages are not available under the Act and thus not included in the calculation. *See id.*

Smith alleges few facts regarding his monetary damages. His complaint does not allege the cost of a replacement vehicle, the present value of the vehicle, or the value he received.

However, even if Smith had properly alleged these costs, I do not see how it is possible that the amount in controversy would rise above the jurisdictional threshold. Between the down payment, monthly payments made, and repossession fees, the complaint only alleges a total of $6,350 in losses. Smith also alleges needing to attend therapy for injuries sustained in the accident as well as "financial hardships" but those allegations are too vague to establish any additional amount in controversy. Therefore, Smith has not pled sufficient facts to meet the amount in controversy requirement of the Magnuson-Moss Warranty Act.

2. Used Car Rule

Even assuming Smith had alleged sufficient damages, his claims also fail on the merits. The requirement to attach a "Buyers Guide" to a used car for sale is set forth in a rule promulgated by the Federal Trade Commission under authority conferred in part by Section 2309 of the Magnuson-Moss Warranty Act. 16 C.F.R. § 455.2. Commonly referred to as the "Used Car Rule," it requires that sellers of used vehicles prominently display on the vehicle itself disclosures about the type of warranty being offered on the vehicle. *Id.* The Dealership objects to Smith's ability to bring this claim because the authority for this rule also comes in part from the Federal Trade Commission Act, which does not authorize a private right of action. There is little precedent on this point, and district courts are divided.

One district court in Arkansas accepted this argument and dismissed an action based on the Used Car Rule. *Nixon v. Brent Manning's Quality Preowned, Inc.*, 2016 WL 6090735, at *3 (W.D. Ark. Oct. 17, 2016), *aff'd sub nom. Nixon v. Credit Cars*, 693 F. App'x 463 (8th Cir. 2017). In contrast, a district court in Georgia implicitly found a claim for violation of the Used Car Rule cognizable under the Magnuson-Moss Act. *Davis v. Bobby Jones Ford, Inc.*, 2012 WL 13005301, at *5 (S.D. Ga. Aug. 7, 2012). But that court went on to hold that the failure to

"attach" a Buyer's Guide did not cause damage because, whether attached or not, the plaintiff's signature was on the Buyer's Guide, which expressly stated the vehicle was sold "as-is-no warranty," as well as a purchase agreement which also disclaimed all warranties on the vehicle. *Id.*

I need not reach the statutory issue, because even if such a claim is permissible, like the plaintiff in *Bobby Jones Ford*, Smith has not alleged facts that link the failure to attach a Buyer's Guide to the vehicle to any damage. The agreement of sale, signed by Smith, contains the following language: "SOLD AS IS I make this purchase knowingly without any guarantee by this dealer." Defs.' Mot. Dismiss Ex. D. This statement is directly next to Smith's signature and in a similar font and text size to the rest of the agreement. In addition to the agreement of sale, Smith also signed a non-warranty notice, which states in three separate places that no warranty attached to the vehicle and that Smith would be solely responsible for any and all repairs. Therefore, regardless of the failure to attach the Buyer's Guide, Smith had explicit notice that the vehicle was sold without a warranty and was therefore not damaged by any potential violation of the Act.

### 3. Implied Warranty

Smith's second claim fails for the same reason—he received, and signed, an agreement of sale and notice clearly disclaiming any warranty, express or implied, on the vehicle. Implied warranties under Magnuson-Moss are governed by state law. 15 U.S.C.A. § 2301(7). Under Pennsylvania law, unless the circumstances indicate otherwise, an "as is" clause in a sales agreement removes any implied warranties for the product because the buyer has notice that he is purchasing the product in the condition he found it. *Morningstar v. Hallett*, 858 A.2d 125, 130 (Pa. Super. 2004); 13 Pa. C.S.A. § 2316. Whether or not a contract constitutes the parties' entire

7

agreement depends on whether "it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (alteration in original). The parol evidence rule prevents parties from adding or subtracting verbal terms to a written contract, deemed to be the entire agreement, except in instances of fraud, accident or mistake. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007). This is particularly true where the alleged oral promise directly contradicts an express term of the written contract. *See Maters v. Roxy Auto Co.*, 101 A.2d 680, 682 (Pa. 1954).

Here, as discussed above, the sales agreement and non-warranty notice contained clear and conspicuous language that the vehicle was sold "as-is" and without any warranty, sufficiently disclaiming any implied warranty on the vehicle. Although there was no integration clause making clear the written contract constituted the entire agreement, the contract contained all the essential terms. It identified the parties, price of the vehicle, value of the down payment, amount and number of installment payments, and the warranty disclaimer. Therefore, the contract sufficed as an "entire" agreement and could not be modified by any verbal offer of a 90 day warranty in direct contradiction of the agreement's written terms. As a result, the contract properly disclaimed all implied warranties on the vehicle and Smith is not entitled to relief under Moss-Magnuson Warranty Act.

### C. Fair Debt Collection Act Claim

The Fair Debt Collection Act (FDCA) prevents debt collectors from taking nonjudicial action to repossess property unless the debt collector has a right to possession under contract or some other enforceable security interest. 15 U.S.C.A. § 1629f(6)(A). If a debt collector violates

this provision, the Act provides a private right of action for damages resulting from the violation. 15 U.S.C.A. § 1692k(a)(1).

In his complaint, Smith makes the conclusory allegation that "Defendants had sent Siani's Towing for the second time to unlawfully repossess my car." Pl.'s Compl. ¶ 39. Assuming for the sake of discussion that the FDCA applies to the Defendants here, Smith fails to set forth a claim. Smith's complaint pleads that the Dealership had the right to repossess the vehicle, because he signed paperwork stating that in the event he missed payments the vehicle would be repossessed. Smith makes no factual allegations in the complaint to support the argument that the second repossession was unlawful. Therefore, he has not pleaded sufficient facts for relief under the FDCA.

### D.  Jurisdiction over State Claims

In addition to his federal claims, Smith has also brought three claims under state law asserting supplemental jurisdiction under 28 U.S.C. § 1367. As he has not pled facts upon which relief can be granted under federal law, I decline to exercise supplemental jurisdiction over the remaining state law claims. Supplemental jurisdiction "is a doctrine of discretion, not [a matter] of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The remaining claims are strictly matters of state law. Where all federal claims are eliminated before trial, a federal court should normally hesitate to exercise jurisdiction unless considerations of judicial economy, convenience, and fairness to the litigants weigh in favor of keeping jurisdiction. *Id*. No such considerations are present here. And even if diversity of citizenship existed, Plaintiff's claims would not meet the jurisdictional amount.

**III.     CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss is granted.  An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
